GROVER YODER, appellant, v. BERTEL G. SMITH and MABEL W. SMITH, d/b/a IOWA CREDIT SYNDICATE, et al., appellees.

No. 50491.

JANUARY 9, 1962.

Guthrie & Blackburn, of Webster City, for appellant.

Denis M. Kelly, of Fort Dodge, for appellees.

OLIVER, J.—This is an action for damages for invasion of the right of privacy and for libel.

Division I of plaintiff's petition alleged defendants wrote two letters to plaintiff's employer which stated, "plaintiff was indebted on various accounts, and requested plaintiff's employer to withhold from plaintiff's wages.

"6. That said letters are an invasion of plaintiff's right to be private in his personal affairs.

"7. That by reason of said communication plaintiff has been grievously injured in the eyes of his employer, his business associates and friends.

"8. That said communications were by their nature malicious and provocative, and were designed for the sole purpose of extracting money from plaintiff through plaintiff's employer."

Judgment was prayed for $10,000 actual damages and $7500 punitive or exemplary damages.

Division II of the petition alleged the letters were false, "the plaintiff not being indebted in any manner to the defendants or any people they represent, and that by reason thereof said defendants communicated a false and libelous statement to the plaintiff's employer."

Defendants' Motion to Dismiss the petition stated:

"1. As a matter of law an employee has no right of privacy as to his employer in regard to debts owed by the employee.

"2. As a matter of law the communications alleged by the plaintiff are not libelous statements.

"3. As a matter of law the communications alleged in plaintiff's petition are privileged communications as to both theories of action stated by the plaintiff."

The trial court sustained the motion to dismiss each division, on the ground:

"It appears from Division I, of the plaintiff's Petition, that the communication was to the plaintiff's employer only, as distinguished from the general public, and since the communication was not made to the general public, it is the opinion of the Court that Division I, of the Petition does not plead a cause of action.

"   *   *   *   *

"Division II of the plaintiff's Petition [charging libel] does not allege malice and in view of this fact it fails to allege a cause of action."

I. In this appeal plaintiff does not contend the dismissal of Division II of his petition, charging libel, was erroneous. Hence, only the dismissal of Division I, which charges interference with plaintiff's right of privacy, need be considered. Interference with the right of privacy has been held actionable in this state in a case not here in point. Bremmer v. Journal-Tribune Publishing Co., 247 Iowa 817, 76 N.W.2d 762. In several states it is governed by statute.

II. Prosser, Law of Torts, 2nd Ed. 1955, 637–639, and his more recent article on Privacy in 48 California Law Rev. 389,

state there are four distinct kinds of invasions of four different interests of the plaintiff which are tied together by a common name but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff "to be let alone." Dean Prosser lists them as follows:

"1. Intrusion upon plaintiff's seclusion or solitude, or into his private affairs.

"2. Public disclosure of embarrassing private facts about the plaintiff.

"3. Publicity which places plaintiff in a false light in the public eye.

"4. Appropriation, for defendant's advantage, of the plaintiff's name or likeness."

■ ■ He points out that the first three torts in his list are primarily concerned with the protection of a mental interest, and that they are only a phase of the larger problem of the protection of peace of mind against unreasonable disturbances.

The alleged invasion here involved is numbered 2 in the foregoing list, public disclosure of embarrassing facts about the plaintiff. Of such an invasion, Dean Prosser states, 48 California Law Rev., 393 and 394:

"First, the disclosure of the private facts must be a public disclosure, and not a private one. There must be, in other words, publicity. It is an invasion of the right to publish in a newspaper that the plaintiff does not pay his debts, or to post a notice to that effect in a window on a public street or cry it aloud in the highway; but, except for one decision of a lower Georgia court which was reversed on other grounds, it has been agreed that it is no invasion to communicate that fact to the plaintiff's employer, or to any other individual, or even to a small group, unless there is some breach of contract, trust or confidential relation which will afford an independent basis for relief."

Decisions of various courts support this statement. Some cases in which the giving of undue publicity to private debts has been held to constitute an invasion of the debtor's right of privacy are cited in an annotation in 138 A. L. R. 22 at page 91. In Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A. L. R.

964, a large sign in a public place stated plaintiff owed an old account there, and in Trammell v. Citizens News Co., 285 Ky. 529, 148 S.W.2d 708, plaintiff's indebtedness was published in a newspaper.

Almost all decisions on the point agree it is not an actionable invasion of a debtor's right of privacy for one, attempting to collect a bill, to communicate to the debtor's employer the fact of his debt. Most of these decisions are cited in Gouldman-Taber Pontiac, Inc. v. Zerbst, 213 Ga. 682, 683, 100 S.E.2d 881, 882, which states:

"Whether a letter written by a creditor to an employer notifying him that his employee is indebted to the creditor and seeking the employer's aid in the collection of the debt constitutes a violation of the right of privacy of the employee, is a question of first impression in this State. Courts of other jurisdictions in dealing with the question have generally held that such does not give a cause of action for a violation of the right of privacy, their reasoning being that, in giving this information to an employer, it was not giving to the general public information concerning a private matter in which it had, or could have, no legitimate interest, since an employer has a natural and proper interest in the debts of his employees. Voneye v. Turner [Ky., 240 S.W.2d 588(3)]; Patton v. Jacobs, 118 Ind. App. 358, 78 N.E.2d 789 [cited by the trial court in the case at bar]; Lewis v. Physicians & Dentists Credit Bureau, Inc., 27 Wash. 2d 267, 177 P.2d 896; McKinzie v. Huckaby, D. C., 112 F. Supp. 642; Housh v. Peth [165 Ohio St. 35, 133 N.E.2d 340]; Hawley v. Professional Credit Bureau, Inc., 345 Mich. 500, 76 N.W.2d 835. * * * we are of the opinion that sending the letter in this case to the plaintiff's employer did not violate her right of privacy. The right of privacy is not absolute, but is qualified by the rights of others."

Haggard v. Shaw, 100 Ga. App. 813, 112 S.E.2d 286, 290, follows the Zerbst case as does Tollefson v. Safeway Stores, 142 Colo. 442, 351 P.2d 274, which cites many of the same authorities. A note in 41 Am. Jur., Privacy, section 30, Cum. Supp. states:

"It is generally recognized that a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy. So, it has been held that an employer may be informed of a debt owed by one of his workers."

It is clear the weight of authority, as well as reason, supports the judgment of the trial court that the petition did not plead a cause of action for invasion of the right of privacy.— Affirmed.

GARFIELD, C. J., and THOMPSON, PETERSON, THORNTON and SNELL, JJ., concur.

LARSON and HAYS, JJ., concur specially.

BLISS, J., not sitting.

LARSON, J. (concurring specially)—The only issue argued before us in this appeal is whether plaintiff's petition for damages for invasion of his right of privacy states a cause of action upon which recovery may be had in this jurisdiction. The trial court held it did not, and we agree. No consideration is given to appellant's Division II based upon libel, for in his argument he concedes "that such an infringement may not be actionable as libel * * *" if the infringement is not libel per se, and no special damages are demanded. No such allegations appear in his petition.

Plaintiff alleged, in substance, that defendants wrote plaintiff's employer two letters stating that plaintiff was indebted on various accounts held by them, and requested aid in making collection thereon. He alleged "That said letters are an invasion of plaintiff's right to be private in his personal affairs", that due to those communications "plaintiff has been grievously injured in the eyes of his employer, his business associates and friends", and that the communications "were, by their nature, malicious and provocative, and were designed for the sole purpose of extracting money from plaintiff through plaintiff's employer."

According to the record, defendant filed an affidavit stat-

ing that it was a partnership engaged in collecting delinquent accounts, that it had for collection an account against one Grover Yoder who it learned was employed at Naden Industries, and that it sent two letters to the employer, one on the 7th and the other on the 15th of February, 1961. Attached were copies of those communications as follows:

"Dear Sir:

"May we ask your assistance?

"We realize this is purely a personal matter and a question of this sort poses a difficult labor relations problem, but since an employee in debt is seldom a happy or efficient one, we felt you might have some suggestions to offer us.

"You see, this employee of yours has failed to complete payments on merchandise received from a creditor whose accounts have been turned to us, even though we have offered the most lenient terms possible for clearing up this over indebtedness, they have failed to complete payments.

"We realize that many people are hard pressed at times and are hesitant to discuss their problems, but if this customer would only get in touch with us, we would only be too glad to cooperate in any way possible.

"Would you be kind enough to speak to your employee about the obligation? Perhaps this would bring a realization of the seriousness of the situation to this person and it would be doing your employee a real favor.

"Please forgive us for troubling you in this way, but we feel that you are as anxious as we are to settle the account amiably.

\* \* \*

"P.S. If this individual is no longer your employee, can you tell us the name and address of his present employer?"

"Gentlemen:

"In response to your letter of February 14, we are listing below, the accounts which Mr. Grover Yoder has due and owing in our office.

"L. J. O'Brien, M.D............................$84.00
"W. B. McGahey, M.D.........................$38.00
"Dr. Forest F. Hall...........................$47.00

"We would appreciate if you could work out some type of plan with Mr. Yoder to withhold part of his wages each month, and clear these accounts up.

"We will expect to hear from you.

"Thank you."

It is true, generally such an affidavit and attached exhibits could not here be considered, for they are in the nature of a speaking demurrer, but, as we shall point out later, it was intended by both parties that the court consider the letters in rendering a decision herein, thereby avoiding the need to send the matter back for a motion to set out the alleged improper communication. Appellant himself stated in his brief and argument that "the pleadings in the Record * * * together with the affidavits and exhibits * * * should be taken as a verity." It shall, therefore, be considered as though stipulated herein.

As grounds for its motion to dismiss, defendant stated, "As a matter of law an employee has no right of privacy as to his employer in regard to debts owed by the employee", and that such communications being "privileged communications" are not actionable. The court's ruling sustaining this motion on these grounds is assigned as error.

In its ruling the trial court referred to our decision in Bremmer v. Journal-Tribune Pub. Co., 247 Iowa 817, 76 N.W. 2d 762, which first recognized the legal right of privacy in Iowa. It found, however, that the elements necessary to constitute a cause of action for invasion of the right of privacy in this jurisdiction are, that the defendant gave the general public information concerning a private matter of the plaintiff, that the matter was of a nature that the general public could have no legitimate interest in it, and that defendant gave such information in a manner which was coercive and oppressive. It concluded no cause of action was pleaded herein because it merely alleged an inoffensive communication to an employer legitimately interested, as distinguished from the public generally which had no

interest in plaintiff's private affairs, and was not made to the public as such. Although this is a newly-recognized field of law in Iowa, under the better authorities and our previous announcements on kindred matters there is little doubt but what the learned trial court was correct in that conclusion.

I. This relatively new field of tort law was not established in this state by statute, and we have as yet established no clear line of demarcation as to what is or is not a reasonable or warranted intrusion on one's absolute right of privacy. Nevertheless, the exceptions or privileges affecting that right, if any, are for the court. Mills v. Denny, 245 Iowa 584, 589, 63 N.W.2d 222, 225, 40 A. L. R.2d 933, 938. Thus on such a motion to dismiss, the court must determine from the well-pleaded facts whether relief can be granted. Bales v. Iowa State Highway Comm., 249 Iowa 57, 86 N.W.2d 244, and citations.

II. In this jurisdiction, in first recognizing the "right of privacy", we found it was the right of an individual to be let alone, to live a life of seclusion, to be free from unwarranted publicity. Bremmer v. Journal-Tribune Pub. Co., supra, and authorities cited therein; Prosser's Handbook of the Law of Torts, 2d Ed. 1955, chapter 20, Privacy; 41 Am. Jur., Privacy, pages 924 to 929 incl.; 77 C. J. S., Right of Privacy, section 1. In the Bremmer case we also quoted with approval from section 867, Restatement of the Law, Torts, Volume 4, chapter 42, section 867, page 398, which states as follows: " 'A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other.' " Thus, in subscribing to the modern doctrine of the right of privacy we recognize in it a development of the common law to fill a need for protection of the interest which a person has in living without unwarranted publicity. 41 Am. Jur., Privacy, sections 5, 6, pages 927, 928; Samuel D. Warren and Louis D. Brandeis, article in IV Harvard Law Review 193. The extent of this right, however, because of its nature, cannot now be established with any degree of certainty. It is in the formative stage. In the only case we have considered we held an allegation insufficient which did no more than allege a wrongful newspaper pub-

lication of a picture of the body of plaintiff's kidnapped child. Holding the finding of the body of the boy, missing for a month, was a present newsworthy event, this court determined the right of privacy as such was not absolute and must be qualified where the interest of others may be involved. In that case it was the legitimate interest of the general public in the matter as a *present newsworthy event*. The same rule has been applied in other jurisdictions to pictures or information as to officeholders, politicians or other public figures, in which the general public has a legitimate interest.

The immediate question before us is whether there is any exception to one's absolute right of privacy where the communication regarding one's indebtedness is to his employer. We hold there is at least a qualified one.

III. It may be said as a general rule there is no unwarranted interference with an employee's "right of privacy" when a creditor merely gives information as to the employee's financial obligations to the employer and asks his aid, especially when the communication is not accompanied by slanderous, defamatory, coercive, or oppressive matter. See annotation, 14 A. L. R.2d 770. Regardless of what this limitation on the right is called, whether a qualified privilege, a qualified exception, or a restricted right, one does not have the right under all circumstances and conditions to absolute privacy, and such is not guaranteed by the terms of any Constitution or statute known to us. It is simply a right recognized by courts in many states as a right under the common law not to be mentally disturbed in an unreasonable or serious manner, unwarranted by legitimate interest of others. Curnutt v. Wolf, 244 Iowa 683, 57 N.W.2d 915.

We believe, as did the Indiana court in Patton v. Jacobs, 118 Ind. App. 358, 78 N.E.2d 789, that an employer has a natural and proper interest in the facts relative to debts owed by his employees. He is subject to the expense and inconvenience of defending himself in garnishee as well as other creditor proceedings, and of keeping books on wage assignments, etc. He is not in a category with the general public, which of course generally would have no legitimate interest in a private matter be-

tween creditor and debtor. So we must conclude that the debtor-employee's right of privacy is not invaded if the alleged communication did no more than inform the employer of the debts and ask his aid in obtaining payment of them. Did it do more here?

IV. This brings us to the remaining question as to the sufficiency of the allegation "That said communications were, *by their nature,* malicious and provocative, and were designed for the sole purpose of extracting money from plaintiff through plaintiff's employer." (Emphasis supplied.) While it may be that the use of clearly abusive, malicious or derogatory language in such a communication could avoid the privilege of the creditor and state a cause of action against the defendant, the allegation here is clearly a conclusion of the pleader. The determination as to the sufficiency of the language used in the first instance is for the court. Bremmer v. Journal-Tribune Pub. Co., supra, 247 Iowa 817, 828, 76 N.W.2d 762; Barber v. Time, Inc., 348 Mo. 1199, 1206, 159 S.W.2d 291, 295. Apparently, doubts as to the sufficiency of such an allegation seem to have been raised, resulting in the willingness of both parties to have the court consider the letters themselves. Of course the rule is well settled that when a doubtful pleading is attacked by motion before the issue is joined, it will be resolved against the pleader, but after the issue is joined, it will be liberally construed. Wilson v. Corbin, 241 Iowa 593, 605, 41 N.W.2d 702.

If the communications are considered, the trial court was acting within its power in determining that the language used was not abusive, malicious or provocative so as to negative the creditor's privilege to communicate such information to the debtor's employer. In Mills v. Denny, 245 Iowa 584, 589, 63 N.W.2d 222, 225, 40 A. L. R.2d 933, 938, we stated, "* * * the rule is quite well settled in all jurisdictions that the question as to whether or not there is a privilege, absolute or qualified, under the circumstances or occasion involved, is for the court." Even if the communications are not considered, we must conclude the allegation insufficient to state a legal cause of action for the breach of the right of privacy by such generalities.

It may be true that when no privilege protects the informant and the communication is made to a disinterested public, it need not be of a malicious character. Thus it has been held that in a case where the creditor published information regarding the debt by posting it on his shop window, recovery was permitted for the reason that the general public had no such interest in the matter as to justify the communication to it. Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A. L. R. 964. For a like holding see Trammell v. Citizens News Co., 285 Ky. 529, 148 S.W.2d 708. Also see annotation, Right of Privacy, 138 A. L. R. 91–93. We have no quarrel with those decisions, for obviously there is a clear and substantial distinction between them and the case at bar. Here there was no communication to the public as such, or to any legally disinterested party.

V. We must conclude plaintiff's petition fails to allege acts necessary to overcome the qualified privilege of a creditor to communicate with the debtor's employer regarding the obligation, and that no such interference with his right of privacy appears which would permit recovery against the defendants.

Therefore, the judgment of the trial court dismissing plaintiff's petition must be affirmed.

HAYS, J., joins in this special concurrence.